ALBERT CASSTEVENS V. TEXAS & PACIFIC RAILWAY COMPANY.

Application No. 1760.   Decided November 12, 1930.
(32 S. W., 2d Series, 637.)

*House, Wilson & House, Mike E. Smith* and *John O. Ragan,* for plaintiff in error.

The Court of Civil Appeals erred in overruling the Forty-fifth Assignment of Error to the effect that the verdict of the jury returned in this case does not represent the unanimous verdict of the jury, as required by law, in that it was based upon a majority vote agreed upon in advance and that such majority vote should control and answers thus obtained be returned into court as the verdict of the jury. Moore v. Ivey, 277 S. W., 106; Southern Traction v. Wilson, 254 S. W., 1104; Railway Co. v. Gray, 105 Texas, 42, 143 S. W., 606; Gulf C. & S. F. Ry. Co. v. Harvey, 276 S. W., 895; Hines v. Parry, 238 S. W., 886; Murray v. Morris, 17 S. W., (2d) 110; Bradshaw v. Abrams, 24 S. W., (2d) 372; Kirby Lumber Co. v. Consolidated Underwriters, 289 S. W., 134; I. & G. N. Ry. Co. v. Cooper, 1 S. W., (2d) 578.

*J. L. Lancaster, Jr.* and *Samuels, Foster, Brown & McGee,* for appellee.

Where jurors agree in advance to be bound by a majority vote in determining issues in a case, and afterward agree to the verdict that is signed by the foreman, and bring it into court, and then upon a poll of the jury by the court, answer affirmatively that it is their verdict, there has been no misconduct, and it is a valid verdict.

There must be strong and compelling evidence of misconduct on the part of the jurors before the appellate court is authorized to set aside the decision of the trial court, and it must be shown that the trial judge abused his discretion in overruling a motion to set aside the verdict because of the misconduct of the jury, and there is nothing in this record to show such abuse. City of Brownsville v. Crixell, 275 S. W., 430; Calteyer v. Mitchell, 110 S. W., 462; M. K. & T. Ry. Co. v. Andrews Lumber Co., 206 S. W., 823; Smith-Boyett Company v. Adams, 16 S. W., (2d) 925.

MR. JUSTICE GREENWOOD delivered the opinion of the Court.

In this case, on motion for new trial, the undisputed testimony disclosed that a jury verdict was found in the following manner:

First: The initial vote by the jurymen on the first of more than twenty-six special issues resulted in three or four jurors voting to answer the question submitted in the affirmative and the remaining jurors voting to answer it in the negative.

Second: Argument among the jurors having failed to secure agreement on the true answer to the first question, the foreman

suggested that each question be answered in accordance with the vote of a majority. The suggestion was voted upon and adopted, all agreeing to let the majority rule in answering all the questions.

Third: The agreement to abide by the vote of a majority was followed in returning every answer. On each question there was a division of opinion among the jurors but each question was answered in conformity to the will of the majority.

Fourth: The vote was taken by the jurors holding up their hands. The foreman wrote down whatever answer was supported by the uplifted hands of a majority of the jurors, without any further vote being taken.

Fifth: After adopting the majority rule and after the majority had expressed their will, all the jurors assented to the answers and when the Court asked in open court if they had reached a verdict and if the written answers reflected the verdict of each juror, some nodded assent and none expressed dissent.

The Court of Civil Appeals found the above facts to have been conclusively established, but adopted the view that such misconduct on the part of the jury was not thereby shown as to forbid the trial judge from exercising his discretion to overrule the motion for new trial. 28 S. W., (2d) 294–296.

We think it cannot be doubted that some jurors joined in the recorded verdict for the reason that they felt bound by the agreement to abide by the will of the majority, and that each answer is contrary to the determination of some jurors as to the true answer to each question, if they had been left uninfluenced by the prior agreement. The decisions of this Court plainly condemn such a verdict as tainted with misconduct, and forbid the courts from entering on such a verdict any final adjudication of the rights and obligations of the litigants.

The case of Houston & Texas Central Railroad Company v. Gray, 105 Texas, 43, definitely established the rule that the discretion vested in the trial court in passing on a motion for new trial is subject to review in the Supreme Court where the uncontroverted facts disclose misconduct by a jury in reaching a verdict, unless such facts negative beyond reasonable doubt that the misconduct actually influenced any juror in giving assent to the verdict. The opinion of Chief Justice Brown in Gray's case merely affirms the power of the Supreme Court to enforce, on undisputed facts, the law of the State as embodied in the Constitution and statutes.

Section 15 of the Bill of Rights guarantees that "the right of trial by jury shall remain inviolate," and commands that the Legislature shall maintain the purity and efficiency of jury trials. Section 13 of Article 5 prescribes that twelve men shall compose a petit jury in the District Court, and that nine members of the jury may render a verdict in trials of civil cases and of certain criminal cases in the District Court, provided that the Legislature may change the rule authorizing less than the whole number of the jury to return a verdict. The Legislature in pursuance of its express constitutional authority, has provided that "no verdict shall be rendered in any cause except upon the concurrence of all members of the jury trying the case," and has required the court to discharge the jury when they cannot agree. Revised Statutes, Articles 2203, 2200. When the jurors bound themselves in advance to answer each special issue in whatever way might be desired by a majority, none of them could know what verdict he was obligating himself to return. Such an agreement is vitiated in like manner as when jurors agree in advance to assess damages in an amount to be found by adding the amounts the several jurors favor and dividing the sum by twelve. The courts condemn such quotient verdicts because each juror substitutes for his own untrammeled judgment what may chance to be the result of unknown and unknowable acts. Dixon v. Pluns, 98 Cal. 384, 20 L. R. A., 699, 700, 35 Am. St., 180. The administration of justice can no longer be pure if chance determines lawsuits instead of conscientious fact findings. The vice in the action of the jury in this case is more potent than in the ordinary condemned quotient verdict. Here, the minority jurors expressly agreed in advance to return a verdict contrary to their convictions as to what was established by the facts in evidence for no other reason than that a majority of their fellows arrived at a different conclusion. Simply stated, the jury agreed to disregard the statute requiring the concurrence of all members in a verdict. No significance attaches to the poll of the jury in open court save that the jurors continued to feel bound by their initial, unlawful agreement and adhered to a verdict arrived at by the misconduct of covenanting with each other in advance to return whatever findings the majority willed.

As stated in Watts v. Holland, 56 Texas, 62, "the exercise of discretion will always be the subject of revision where it can be made to appear that it has been abused to the subversion of a rule of law which conferred a right upon the injured party."

We would not give effect to the mandate of the Constitution if we did not resolve any doubt about whether misconduct influenced a verdict against the verdict. We are not concerned with balancing the conflicting considerations so clearly stated by Justice Lamar in McDonald v. Pless, 238 U. S., 267, whereby the State's public policy should be determined relative to permitting a jury's misconduct to be shown by the testimony of a juror. The Legislature has declared in Article 2234 that misconduct may be proved by a juror's testimony in open court, such as that given in this case. Thus the statute settles the State's public policy on this point. If the evidence as to misconduct be conflicting the trial court's finding binds the appellate courts as does any other fact finding on conflicting evidence. But once material misconduct in arriving at a verdict is shown by undisputed facts, or is found on conflicting evidence, it becomes the duty of the courts to vacate the verdict, unless the party seeking to uphold same removes all reasonable doubt as to the misconduct having resulted to the prejudice of the complaining party. This rule prevails in other eminent courts of last resort.

In an action for damages for personal injuries, the Supreme Court of Wisconsin, considering an unauthorized view of the premises where the injuries were received, reached the conclusion: "Whether such examination was influential in securing a verdict in favor of the plaintiff is impossible to tell. We cannot say that it did not have that effect. Since it may have had that effect, we must assume that it did have that effect." Peppercorn v. City of Black River Falls, 89 Wis., 41, 46 Am. St., 818. The Supreme Court of Minnesota states the rule to be: "Where the misconduct may have had an effect unfavorable to the defeated party, the other party may be permitted to show that in fact it did not have such effect. But that would have to appear very clearly,—so clearly as to leave no doubt as to the fact. When it may have had an unfavorable effect it would be unsafe to allow any speculation whether in fact it did or not." Woodbury v. City of Anoka, 52 Minn., 332.

The Supreme Court adopted the holding of the Commission of Appeals in Moore v. Ivey, 277 S. W., 107, that the principle was now well established in this State, following H. & T. C. Ry. Co. v. Gray, *supra*, that whenever "it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside

by the trial judge; if, in such a case a new trial is not granted there is an abuse of discretion by the trial judge and reversal becomes the duty of the appellate courts."

The Supreme Court has often applied the rule announced in Gray's case to acts of misconduct similar to those disclosed by this record, always ordering a new trial, and in many cases decided by the Commission, such as Moore v. Ivey, *supra,* opinions in line with the decision in Gray's case have been expressly approved. Gulf, C. & S. F. Ry. Co. v. Harvey, 276 S. W., 896–898; Hines v. Parry, 238 S. W., 886; Rhoades v. El Paso & S. W. R. Co., 248 S. W., 1064, 27 A. L. R., 1051; Southern Traction Co. v. Wilson, 254 S. W., 1105; St. Louis & S. W. R. Co. v. Robinson, 285 S. W., 269, 46 A. L. R., 1509; International & G. N. R. Co. v. Cooper, 1 S. W., (2d) 579; Texas & N. O. Ry. Co. v. Parry, 12 S. W., (2d) 1000.

Article 1728 of the Revised Statutes as amended by Chapter 144, page 214, of the Acts of the 40th Legislature authorizes the Supreme Court to reverse and remand a case, on application for writ of error, if the decision of the Court of Civil Appeals is in conflict with a previous opinion of the Supreme Court.

We have shown that the opinion of the Court of Civil Appeals, on the question of misconduct is in conflict with decisions of the Supreme Court. There is no uncertainty in our decisions. They necessarily control the disposition of the case, which must be remanded to the District Court. The other questions presented are of a nature wholly unlikely to arise on a new trial. We therefore conclude we should exercise the discretionary authority conferred on the Court by amended article 1728, and it is ordered that the judgments of the District Court and of the Court of Civil Appeals be and they are here and now reversed and this cause is remanded to the District Court for a new trial.