**CENTRAL NAT. BANK OF SAN ANGELO**
**v. COX.**

No. 8285.

Court of Civil Appeals of Texas. Austin.

July 15, 1936.

Rehearing Denied Sept. 23, 1936.

S. C. Autry and Collins, Jackson & Snodgrass, all of San Angelo, for appellant.

Gibbs & Williams, of San Angelo, for appellee.

BAUGH, Justice.

Appeal is from a judgment in favor of appellee, plaintiff below, against appellant, upon findings of a jury on special issues submitted to them. The suit as orig-inally filed in 1929 was by Mrs. Lena M. Cox, wife of Fred Cox, deceased, against Robert Massie, for a balance alleged to have been due to Fred Cox on January 1, 1928, under a claimed partnership arrangement between Cox and Massie beginning January 1, 1924. Massie died testate after the suit was filed, and in his will appointed appellant as independent executor of his estate. Shortly after his death, his wife, Mary L. Massie, principal devisee under her husband's will, also died testate, and appellant was appointed independent executor of her estate. By amendment appellant, as executor of the estates of both Robert Massie and of Mary L. Massie, was made defendant.

By her second amended petition, on which the case was tried, appellee abandoned the partnership theory and sought recovery under an employment contract between her husband and Robert Massie, and alleged a stated account as of January 1, 1928, as fixing the amount due to Cox. In addition to a general demurrer and general denial, appellant, among other things, alleged breach of such contract by Cox; that if he were entitled to any additional compensation for his services, same was dependent upon the profits of the business conducted; that such profits as shown by the books of the business, kept under the direction of Cox, consisted only of notes and accounts outstanding and uncollected on January 1, 1928; that a great portion of such notes and accounts proved to be worthless and were subsequently charged off as losses; and that after deducting the amount of such worthless notes and accounts from the book or paper profits which appellee claimed were due to Cox, Robert Massie did not owe Cox's estate anything; but that Cox had already drawn from the business more than he was entitled to receive under the agreement on which the suit was based.

The following material facts appear: The business, conducted under the name of Robert Massie Company, was a furniture and undertaking business in the city of San Angelo of which Massie, a ranchman, was sole owner. Cox took charge of it as manager on January 1, 1924, and continued in active charge until November, 1927, when his health failed, and from that time until his death on February 4, 1928, he was inactive and took no part in it. The only agreement between him and Massie was that shown by the

testimony of Massie, through depositions taken prior to his death, in which he testified, as follows: "I hired Fred Cox about 1923, and was to give him $200.00 a month. At the end of the year Mr. Cox said to me that his expenses were so high that he could not live on $200.00 a month, and I told him the business would not stand any more, but that I would make him this proposition: That we would go on and run the business, and Mr. Cox pay me ten per cent on my investment, and I would pay him $200.00 a month and at the end of five years if there was any profit we would divide it after paying me 10% on the investment, but no money was to be taken out of the business."

The books of Robert Massie Company, kept under the management of Cox up to January 1, 1928, introduced in evidence by appellee, showed profits of said company during the years 1924, 1925, 1926, and 1927; and that Cox during said years, in addition to his salary of $200 per month, had drawn from said business more than $30,000 in money; that there was due him, according to said books, as of January 1, 1928, the sum of $13,532.07; that during 1928 and 1929, additional payments aggregating $5,567.36 were made to Mrs. Cox on said account, leaving a balance due her, as shown by said books, in the sum of $7,964.71. This suit was filed for that amount on December 30, 1929, and on December 31, 1929, the Robert Massie Company closed the account of Cox by charging back to the capital account said sum of $7,964.71.

Four issues were submitted to the jury, in answering which they found that the profits accrued to Cox on January 1, 1928, from said business amounted to $13,532.07; that such profits consisted of merchandise, notes, and accounts; and that the value of said profits on January 1, 1928, was $11,500.

■ The first contention made by appellant is that the court should have instructed a verdict in its favor because appellee wholly failed to prove the contract pleaded by her. The contract pleaded was that Massie employed Cox until he should die or become incapacitated. The only contract proven was that shown by the testimony of Massie above quoted. The contract as pleaded was not within the statute of frauds (Vernon's Ann.Civ.St. art. 3995), since it could have been per-

formed in one year. While the pleadings do not indicate whether such contract was oral or in writing, the evidence shows that it was oral. As pleaded, it was not subject to demurrer nor to special plea of the statute of frauds. If, however, the contract as proved (and the evidence as to such contract was then on file in the depositions of Robert Massie) had been pleaded in the amended petition, it would have been subject to such defense or special plea. Since, however, this evidence was introduced by appellee without any objection by appellants, and in the absence of special plea or objection to the evidence when offered, appellant will be held to have waived its right to assert the statute of frauds. DeProy v. Progakis (Tex.Civ. App.) 259 S.W. 620; 20 Tex.Jur. § 135, p. 354, and cases there cited.

■ Was there such a variance between the pleadings and proof of appellee as would defeat her right of recovery? We do not think so. The only variance was as to the duration of the contract. The terms of the contract otherwise are not controverted. All of the facts were fully known to the appellant, and it clearly appears, we think, that neither the pleadings nor the proof in any way either misled or surprised the appellant. That being true, such variance is not grounds for reversal. National Bank v. Stephenson, 82 Tex. 435, 18 S.W. 583; Fowler Comm. Co. v. Charles Land & Co. (Tex.Com. App.) 248 S.W. 314.

■■ The real controversy in this suit, however, as clearly shown by the record and the issues submitted to the jury, was not the validity of the contract involved, nor whether same was performed in full, but whether the amounts shown by the books of the company as due to Cox on January 1, 1928, constituted a stated account between them and was conclusive of the amount still due to Cox' wife. The cases are legion on what constitutes an account stated. In general the essential elements involved are: Transactions between the parties which give rise to an indebtedness of one to the other; an agreement, express or implied, between them fixing the amount due; and a promise, express or implied, by the one to be charged, to pay such indebtedness. 1 Tex.Jur. p. 371 et seq.; 1 C.J. 678; 1 Am.Jur. 272; 1 C.J.S., Account Stated, p. 693. On January 1, 1928, when the entries on the Rob-

ert Massie Company's books showing the amount due to Cox were made, there was wholly lacking proof to show any agreement by Massie as to the correctness thereof, or any agreement by him to pay Cox the amount there shown. On the contrary, the books were kept under the supervision of Cox, and the bookkeeper testified that Massie had not inspected them. After Cox died, however, Massie employed a new manager, had the books audited, and the Cox account was not only carried forward during the years 1928 and 1929 without question or correction, but no change therein was made until December 31, 1929, the next day after this suit was filed. Not only was this done, but Massie, through his new manager, caused to be paid to appellee herein various sums during 1928 and 1929, aggregating $5,567.36, and charged same against the balance due Cox as shown by his account on the books of the company. With full knowledge therefore actual or imputed to Massie himself, or to his duly authorized agent in the person of his new manager, of said account, there was an acquiescence in its correctness over a period of two years, and a substantial part payment of it. This conduct and acquiescence was clearly sufficient to constitute an implied assent to the correctness of said account; and where the parties agree upon the amount due the law implies a promise to pay it. Scofield v. Lilienthal (Tex.Civ.App.) 268 S.W. 1047; Peurifoy v. Hood Rubber Products Co. (Tex.Civ.App.) 59 S.W.(2d) 428; 1 C.J. 689; 1 Tex.Jur. 379; 1 Am.Jur. 284; 1 C.J.S., Account Stated, p. 712.

This, however, did not necessarily make said account conclusive, nor preclude appellant from the defenses or offsets pleaded by it. While conclusive as to what the books showed, the contract out of which the account arose as pleaded and as proven by appellee herself, and the basis of the account so stated, was that in addition to the $200 per month salary to be paid to Cox, his additional compensation was to consist of a half interest in the profits of the business over the period covered. It is not controverted that the account in question represented Cox' share in such profits, and that such profits in large measure consisted of notes and accounts outstanding at the time and carried on the books at face value. Numerous notes and accounts had been charged off as worthless by Cox during his management, some of which had been subsequently collected, and one-half of such collection paid over to Cox or to Mrs. Cox after his death. Others, carried on the books at face value, and entering into the amount set up as profits due to Cox, were, subsequent to his death, charged off as worthless. The bookkeeper and the credit man of said company testified that these worthless accounts and notes, in addition to what had been charged off by Cox prior to January 1, 1928, subsequently aggregated some $17,000, one-half of which, if charged against Cox' account on the books, would offset any balance claimed by appellee to be due her.

■ While the relation between Cox and Massie is not now asserted as that of a partnership, we think the rules governing partnerships, where one partner furnishes the capital and the other services under an agreement to divide the net profits of the business, would be applicable here. That being true, after the death of Cox, Massie's position was in the nature of that of a trustee to pay the debts incurred during the existence of the relationship and to collect the claims due the business. 32 Tex.Jur. 507; 47 C.J. 1044, 1059. No complaint is made in appellee's supplemental petition that Massie was guilty of neglect, improper conduct, bad faith, failure to use due diligence, or was otherwise derelict of duty in his efforts to collect such outstanding notes and accounts, or that the value or collectibility of same was diminished by his efforts or delays in handling them. If as a matter of law the Cox account, showing the profits claimed, was chargeable with losses suffered on such notes and accounts as constituted the basis of such profits, it was incumbent upon the appellee, as plaintiff, to plead and prove failure of Massie to use diligence in collecting same and that such conduct on his part rendered, or contributed to render, such notes and accounts worthless, if they did in fact become so. While the jury in answer to special issue No. 4 found that the value of the profits on January 1, 1928, credited to Cox' account was $11,500, we find no competent evidence as to what such value was at that time.

■ We are also of the opinion that under the case as made by both pleadings and proof of appellee, the account of Cox stated on the books was subject to be charged with losses sustained in the out-

standing notes and accounts upon which it was predicated and entered. In First National Bank v. Rush (Tex.Com.App.) 210 S.W. 521, 527, in an approved Commission opinion, it was held in a partnership case that "uncollected notes and accounts should not be treated as money and charged to either party." In Crawford v. Calkins, 170 Mich. 587, 136 N.W. 369, it was held that notes could not be considered as profits until collected. A somewhat analogous situation was presented to this court in Gillean v. Bennett, Tarlton & Co. (Tex.Civ.App.) 264 S.W. 229. See, also, 39 C.J. 154. The fairer rule in cases of accounting based upon profits of a business, and the one supported by reason and authority, is to arrive at such profits as are actually earned; and profits carried on the books as such should be dependent upon the collectibility of the notes and accounts going to make up such book entries. Unless the value or collectibility of such notes and accounts was reduced by some fault on the part of Massie, Mrs. Cox should suffer with him, who owned a half interest therein, such loss as occurred. And if the entries on the books be treated as a stated account between them, it was subject to such adjustment or modification under the contract upon which it was based.

■ Nor did Massie, as contended by appellee, estop himself, by his conduct in the premises, to assert such explanation and adjustment. He owned a half interest in such notes and accounts, continued the business after the death of Cox, and undertook, as it was his duty to do, to collect same. His conduct in doing so cannot be construed as an acceptance by him as his own property the notes and accounts in question at their face value, nor an implied agreement to do so and to pay to Mrs. Cox the balance shown to be due on the books of the company. His conduct was entirely consistent with and in keeping with his legal duty to collect same with diligence and so wind up the affairs between him and Cox.

■ The next contention presented complains of the admission of testimony of Mrs. Cox as to when her husband became incapacitated, when his active services as manager ceased, and when he died. This on the ground that same contravenes article 3716, R.S.1925, and under the allegations as to the contract between Cox and Massie and that same should terminate on the death or disability of Cox. Most of these matters were established by other evidence and such testimony does not appear to have affected the material issues in the case. It was, we think, harmless; but in view of another trial it is pertinent to observe that such testimony was inadmissible under the provisions of the statute and the rule announced in Parks v. Caudle, 58 Tex. 216; Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298, 239 S.W. 185; and International Travelers' Ass'n v. Bettis (Tex.Civ.App.) 3 S.W.(2d) 478; Id., 120 Tex. 67, 35 S.W.(2d) 1040.

■ Appellant also complains of the fixing of January 1, 1928, as the date upon which the rights of the parties were determined. Under appellee's pleadings that the arrangement between Massie and Cox should terminate on the latter's disability or death and that he ceased active service in November, 1927, and died on February 4, 1928, it is insisted that one or the other of these dates would have been the proper date of such inquiry. In this we think appellant was correct. Since, however, there was no proof that the agreement should terminate on the disability of Cox, and he was paid his salary up to February 1, 1928, the appropriate date would appear to be the date of his death. The record discloses, however, the balances on the books were entered as of January 1st, of each year; and both parties introduced and confined their evidence to January 1, 1928, when the stated account relied upon was made, and there was no showing nor contention made that there was any material difference between the relative rights of the parties as they existed on February 4, 1928, and that shown by the books as existing on January 1, 1928, which last date was accepted as the most practical time for such determination. Consequently, we think this variance was immaterial and harmless. There was no indication that the status of the business, or of the accounts and notes involved, was any different on February 4, 1928, from what it was on January 1, 1928.

■ Appellant also urges alleged misconduct of the jury as requiring the granting of a new trial. The misconduct complained of was a statement of one of the jurors that the case presented one of capital against labor; that one of the attorneys for appellant had robbed some minors out of large sums of money and that no-

body should pay attention to what he said; and that the question was raised as to what had become of the proceeds of a $10,000 insurance policy on the life of Cox, only $610 of which had been paid to Mrs. Cox. None of these matters were in evidence. It was shown on motion for rehearing that Massie had collected the $10,000 insurance money and had paid all of it out for the benefit of Cox's estate, including a debt against his home, except the $610 remitted to Mrs. Cox, and that none of it had any relation to the matters here in controversy. While all of the jurors save one testified that these statements had no influence upon their verdict, they were undoubtedly prejudicial in character and improper. One of the jurors, the foreman, who took the view that the notes and accounts were worthless and that Mrs. Cox was not entitled to recover anything, and so voted on the first ballot, testified that the matter of the insurance money influenced him in changing his verdict. It is unnecessary to discuss this issue at length. These extraneous matters were of such prejudicial character as might be calculated, whether consciously or unconsciously, to influence some of the jurors to the prejudice of appellant. If even one juror, who believed that the insurance matter was in evidence, wondered what became of the $10,000 insurance other than the $610 paid to Mrs. Cox, it was but natural that he should infer that at least a portion of it went to Massie. We think therefore that it is reasonably doubtful whether such improper conduct influenced the verdict, even if it may not be reasonably inferred that it did. There being no contention that the misconduct did not occur, under the circumstances we think the court should have granted a new trial. Casstevens v. T. & P. Ry. Co., 119 Tex. 456, 32 S.W.(2d) 637, 73 A.L.R. 89; Texas & P. Ry. Co. v. Van Zandt (Tex.Com.App.) 44 S.W.(2d) 950; Weidmer v. Stott (Tex. Civ.App.) 48 S.W.(2d) 389; Gaines v. Stewart (Tex.Civ.App.) 57 S.W.(2d) 207; 31 Tex.Jur. § 30, p. 32, and cases there cited.

While we have not undertaken to discuss all of the issues raised by appellant, what we have said substantially disposes of them. For the reasons stated, the judgment of the trial court is reversed and the cause remanded for another trial.

Reversed and remanded.